**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 4 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re: C. RABON MARTIN,

    Appellant.

No. 03-5204

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 00-AP-1-K)**

Submitted on appellant's brief:

C. Rabon Martin, Pro Se, Tulsa, Oklahoma, for Appellant.

Before **TACHA**, Chief Circuit Judge, **HENRY**, and **O'BRIEN**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

    Appellant C. Rabon Martin, an attorney appearing pro se, appeals the order entered by the district court on November 25, 2003 denying his supplemented application for reinstatement to the bar of the United States District Court for the

Northern District of Oklahoma. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm. *

## I.

In September 1997, this court suspended Mr. Martin from practicing before it for one year and one day. *See* Aplt. App., Tab 1 at 1. In February 1999, as a result of the suspension by this court, the district court suspended Mr. Martin from practicing in the Northern District of Oklahoma. *See* Aplt. App., Tab 2 at 1-2; N.D. LR 83.3(G) (providing that "[a]ny member of the bar of [the district court] . . . suspended from practice in any court of competent jurisdiction, shall be suspended automatically from practice in [the district court]").

In April 1999, the district court entered an order reinstating Mr. Martin "to practice in the . . . Northern District of Oklahoma, on probationary status for one year." Aplt. App., Tab 2 at 3. At that time, Mr. Martin had already served his suspension in this court, and he had been reinstated to practice in this court with a one year probationary period. *Id.*, Tab 1 at 4.

Subsequently, Mr. Martin once again ran into problems with regard to his activities in this court. As a result, on July 6, 1999, this court entered an order

---

* After examining appellant's brief and the appellate record, this panel has determined unanimously to grant appellant's request for a decision without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

directing Mr. Martin to show cause why he should not be suspended from practicing in this court "for his failure to abide by the rules of this court." *Id.*, Tab 3 at 2. In the response that he filed to the show cause order, Mr. Martin did not attempt to show cause why he should not be suspended from practicing in this court. Instead, Mr. Martin "acknowledge[d] that, once again, he ha[d] overlooked one or more applicable rules of this [court]," *id.*, Tab 4 at 1, and he requested that he be allowed to resign from the bar of this court, *id.* On July 30, 1999, this court accepted Mr. Martin's resignation from its bar. *Id.*, Tab 5 at 2.

After Mr. Martin resigned from the bar of this court, the district court entered an order disbarring him from practicing before it. *Id.*, Tab 6. The disbarment order was entered pursuant to N.D. LR 83.3(H), which provides that "an attorney of [the district court's] bar who is under investigation for misconduct . . . in any court of competent jurisdiction, who resigns from the bar of the investigating jurisdiction, . . . shall forthwith be disbarred from practicing in [the district court]." On January 12, 2000, in response to a motion to reconsider that was filed by Mr. Martin, the district court entered an order rescinding the disbarment order, and the court instead ordered that "Mr. Martin is suspended, rather than disbarred, from practice before the . . . Northern District of Oklahoma." Aplt. App., Tab 8 at 2. The court further ordered that "Mr. Martin

-3-

may apply for reinstatement . . . no sooner than two years from December 10, 1999." *Id.*

On April 18, 2002, Mr. Martin filed an application to be reinstated to the bar of the Northern District of Oklahoma. *Id.*, Tab 9. On July 12, 2002, the district court entered an order denying Mr. Martin's application for reinstatement. The court denied the application because it found that Mr. Martin had violated the January 12, 2000 suspension order by continuing to represent clients in cases pending in the Northern District of Oklahoma. *Id.*, Tab 10 at 2-7. Mr. Martin did not file an appeal in this court regarding the July 12, 2002 order.

On December 18, 2002, Mr. Martin filed a pleading in the district court entitled "Resubmission Of Supplemented Application For Reinstatement" (supplemented application). *Id.*, Tab 11. As summarized by the district court, in his supplemented application, Mr. Martin argued that "the activities which he has undertaken during his suspension do not require admission to the bar of the Northern District of Oklahoma, e.g., he has neither personally appeared in court nor signed pleadings . . . . Rather, he has only performed tasks which a legal assistant could have performed." *Id.*, Tab 14 at 3.

The district court subsequently set Mr. Martin's supplemented application for a hearing before a three-judge panel. In response to the hearing setting, Mr. Martin filed a pleading in the district court entitled "Request For

-4-

Clarification And, As Appropriate, Notice" (request for clarification), requesting that

> he be afforded due process, consisting of written notification, in advance of the "hearing," apprizing [him] of any and all allegations which might be brought against him, and which will be litigated at such hearing, in order to afford [him] a fair opportunity to prepare to meet said allegations, and to garner witnesses and/or exhibits to present in opposition to any such allegations.

*Id.*, Tab 13 at 1. Although the district court did not formally rule on Mr. Martin's request for clarification, the court implicitly denied the request because it did not provide Mr. Martin with any further notice regarding the hearing on the supplemented application.

The hearing on Mr. Martin's supplemented application took place on August 27, 2003 before the Honorable Terence C. Kern (the Chief Judge of the Northern District of Oklahoma at the time), the Honorable Clair V. Eagan, and the Honorable James H. Payne (the panel). *See* Supplemental R., Vol. II. During the hearing, the panel questioned Mr. Martin regarding the work that he had performed in cases pending in the Northern District of Oklahoma since his suspension in January 2000. As summarized by the panel during the hearing, Mr. Martin's global response to the panel's questioning was that he believed "that [he was] allowed to do anything that a legal assistant could do which basically allowed [him] to participate in fees and help with the work as long as [he] didn't make an actual appearance in federal court or sign a pleading." *Id.* at 23. But

-5-

Mr. Martin also testified that: (1) while he referred all Northern District of Oklahoma cases to supervising attorneys who were admitted to practice in that court, he nonetheless shared or split the attorney's fees that were paid to those attorneys, *id.* at 4-5, 15-16; and (2) he participated in client interviews, *id.* at 3-4.

On November 25, 2003, the panel entered an order denying Mr. Martin's supplemented application, concluding that he had violated the January 12, 2000 suspension order by "continu[ing] to perform tasks that constituted the practice of law in matters that he knew would, or currently did, fall within the jurisdiction of the Northern District." Aplt. App., Tab 14 at 6. The panel also found that, "[i]n a number of cases, Mr. Martin took monies in exchange for his work in the form of an attorney fee. The fees that he received were not allocated on an hourly basis but on a percentage or proportionate basis wherein he received a share of the fee from the attorney to whom he referred the matter." *Id.* (citations omitted). Consequently, according to the panel, "Mr. Martin, *in the capacity of attorney*, continued to profit from cases in the Northern District." *Id.* at 7.

Mr. Martin is now appealing the November 25, 2003 order, arguing: (1) that the district court deprived him of procedural due process; (2) that the constraints imposed by his suspension cannot exceed the scope of the privileges conferred by his initial admission to the bar of the Northern District of Oklahoma; and (3) that the district court erred by failing to consider his good faith. For the

reasons set forth below, we reject each of Mr. Martin's arguments, and we affirm the district court's denial of his supplemented application.

## II.

### 1. Subject Matter Jurisdiction and Standard of Review.

In *Mattox v. Disciplinary Panel of the United States Dist. Court for the Dist. of Colorado*, 758 F.2d 1362 (10th Cir. 1985), this court reversed an order of a district court that denied a suspended attorney's application for readmission to the bar of the district court, concluding that the district court had violated the attorney's right to procedural due process by failing to "give notice and the reasons for its view before its decision [was] final, and [by failing to] give the [attorney] an opportunity to respond." *Id.* at 1369. Based on *Mattox*, it would appear that this court has subject matter jurisdiction over this appeal. We note, however, that *Mattox* did not specifically address the issue of whether this court has subject matter jurisdiction to review district court readmission orders in cases involving suspended attorneys. As a result, before proceeding to the merits of Mr. Martin's appeal, we need to address the issue of subject matter jurisdiction.

The Ninth Circuit has recently stated that "[o]rdinarily, appellate jurisdiction to review an order by the District Court denying admission to practice generally before it is lacking because the denial of a petition for admission to a district court bar is neither a final order appealable under 28 U.S.C. § 1291 . . .

-7-

nor an interlocutory order appealable under 28 U.S.C. § 1292." *In re North*, 383 F.3d 871, 874 (9th Cir. 2004) (quotation omitted). In this case, however, we do not need to decide whether this court has subject matter jurisdiction to review "an order by the district court denying admission to practice." *Id.* Rather, this case involves the much easier issue of whether we have jurisdiction to review the denial of a suspended attorney's application to be readmitted to the bar of a district court where the denial is based on a finding that the attorney had violated the terms of the suspension. In effect, this case thus involves a suspension order, or, more precisely, an order continuing a suspension. Accordingly, we hold that this case falls within the well-established rule that the federal circuit courts have subject matter jurisdiction "to review orders suspending or disbarring attorneys from practicing before the bars of federal district courts." *Id.*; *accord In re Surrick*, 338 F.3d 224, 229 (3d Cir. 2003) (holding that a district court order suspending an attorney from the district court's bar was a final order for purposes of 28 U.S.C. § 1291); *In re Calvo*, 88 F.3d 962, 964-66 (11th Cir. 1996) (holding that an appeal from a district court disbarment order presented a justiciable case or controversy); *In re Palmisano*, 70 F.3d 483, 484-85 (7th Cir. 1995) (same); *In re Jacobs*, 44 F.3d 84, 87-88 (2d Cir. 1994) (holding that circuit court had jurisdiction to review order of federal grievance committee that suspended an attorney from practicing in a district court); *see also In re Snyder*, 472 U.S. 634,

-8-

643 n.4 (1985) (noting that a district court suspension order "would be subject to review by the Court of Appeals").

As for the standard of review, we review the district court's decision to continue Mr. Martin's suspension for an abuse of discretion. *See Surrick,* 338 F.3d at 229; *Jacobs*, 44 F.3d at 88; *cf. Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1169 (10th Cir. 2003) (stating that "[w]e review for abuse of discretion all aspects of a trial court's imposition of sanctions for rules violations," and that "[t]he trial court's factual findings regarding the conduct of attorneys will not be disturbed unless there is no reasonable basis to support those conclusions") (quotation omitted). But our review is not constrained with respect to legal issues, and "our review of the District Court's interpretation of legal precepts is plenary." *Surrick*, 338 F.3d at 229.

**2. Procedural Due Process Claim.**

As noted above, in *Mattox*, we held that a federal district court violated a suspended attorney's right to procedural due process when it denied her application for readmission to the bar of the court without giving her prior notice of the reasons for the denial and an opportunity to respond. *See Mattox*, 758 F.2d at 1368-69; *cf. G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 830 (10th Cir. 1990) ("The due process clause of the fifth amendment . . . requires that an attorney facing sanctions in federal court be given notice and an opportunity to be

heard before final judgment."). In light of *Mattox*, we believe the district court may have violated Mr. Martin's right to procedural due process when it entered the July 12, 2002 order denying his initial application for reinstatement, as the court did not give Mr. Martin any prior notice of the reasons for the denial or an opportunity to respond. Mr. Martin did not appeal the July 12, 2002 order, however, and the only order at issue in this appeal is the order entered by the panel on November 25, 2003 denying the supplemented application for reinstatement. Consequently, Mr. Martin's procedural due process claim is limited to the November 25, 2003 order. [1]

Prior to entering the November 25, 2003 order, the panel did not explicitly provide Mr. Martin with notice of the reasons for the decision to deny his supplemented application. Nonetheless, we conclude that Mr. Martin had sufficient prior notice and an opportunity to respond before the panel entered its order. As a result, the panel did not violate Mr. Martin's right to procedural due process when it denied his supplemented application.

---

[1] Although "[a]n appeal from a final judgment usually draws into question all prior non final orders and all rulings which produced the judgment," *McBride v. CITCO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) (quotation omitted), this rule does not apply to the district court's July 12, 2002 order because that order was itself a final judgment.

To begin with, by Mr. Martin's own admission,

> [u]pon receiving the [July 12, 2002] order denying re-admission, Appellant reviewed each of the accusations, prepared his defense and responded thereto. A "Supplemented and Resubmitted" Application for Reinstatement was used as the vehicle for presenting Appellant's defense[.]
>
> The "Supplemented and Resubmitted" Application for Reinstatement responded to each of the accusations inherent in the findings set forth in the initial order denying reinstatement, showing each to be without merit.

Aplt. Br. at 11. Thus, by filing the supplemented application, Mr. Martin had an opportunity to respond to all of the charges in the July 12, 2002 order.

In addition, as set forth above, after Mr. Martin submitted his supplemented application, a hearing was held before the panel. The hearing provided Mr. Martin with yet another opportunity to explain why he had not violated the January 12, 2000 suspension order. Based on the questions that were posed by the panel during the hearing, it was also unmistakably clear that the panel's concern with regard to the supplemented application was that Mr. Martin had engaged in post-suspension conduct in cases pending in the Northern District of Oklahoma that was inconsistent with his claim that he had acted only as a legal assistant or law clerk. *See* Supplemental R., Vol. II at 3-23. As a result, Mr. Martin's claim that he did not have sufficient prior notice of the reasons for the panel's decision to deny the supplemented application is without merit. To the contrary, the panel's concerns were amply revealed at the hearing, and Mr.

Martin had a full and fair opportunity to respond to those concerns during the hearing. *Id.* at 23-27.

We also note that, despite the request for clarification that he had filed before the hearing, Mr. Martin did not assert a single objection at the hearing to the effect that he was unprepared or unable to respond to the panel's questions due to a lack of prior notice regarding the topics that were to be explored at the hearing. We therefore conclude that Mr. Martin's right to procedural due process was not violated.

**3. Mr. Martin's Conduct While Under Suspension.**

This case raises the issue of whether an attorney who is suspended from practicing in a district court may assist another attorney in a case pending in that court, so long as the suspended attorney functions only as a legal assistant or a law clerk. This is an issue of first impression in this circuit. In the November 25, 2003 order, the panel relied on the Third Circuit's decision in *In re Mitchell*, 901 F.2d 1179 (3d Cir. 1990) to support its finding that Mr. Martin had violated the January 12, 2000 suspension order by continuing to practice law in the Northern District of Oklahoma. *See* Aplt. App., Tab 14 at 4-5. Like the panel, we also adopt the reasoning of *Mitchell* for purposes of resolving the attorney suspension issues that are raised by this case.

*Mitchell* involved an attorney who had been suspended by the Third Circuit from practicing before it, and the case raised "the question of to what extent, if any, an attorney suspended from practice before [a circuit court] may assist another attorney in a case before [that court], effectively functioning as a law clerk or paralegal." *Mitchell*, 901 F.2d at 1185. *Mitchell* is equally instructive for purposes of analyzing a district court suspension, however, and it has been followed in that context by at least one other circuit court. *See Cooper v. Texaco, Inc.*, 961 F.2d 71, 72-73 (5th Cir. 1992).

In *Mitchell*, the court began its analysis by noting that "a number of jurisdictions permit suspended attorneys to act as law clerks, on condition that they have no contact with clients or courts." *Mitchell*, 901 F.2d at 1185. Relying on a decision of the Florida Supreme Court, the court pointed out that the rationale for this practice is that the "[e]mployment of [the suspended attorney] in a supervised status within the profession [is] . . . an almost ideal manner in which he may demonstrate during his suspension his potential for rehabilitation and maintain his competency to practice law upon reinstatement." *Id.* (quoting *The Florida Bar v. Thomson*, 310 So. 2d 300, 302 (Fla. 1975)). The court then proceeded to adopt the approach of the majority of jurisdictions, concluding as follows:

> We will follow the majority of jurisdictions, and will permit a suspended attorney to work as a law clerk, with respect to matters in

-13-

this court *with no contact with clients or the court, under the close supervision of an attorney who is admitted to practice before us.* We agree with the Florida Supreme Court that this process would contribute to the rehabilitation of the suspended attorney, and we are satisfied that both the public and the court will be adequately protected by the restrictions on the suspended attorney's activities, and the fact that the attorney in good standing will be responsible for close supervision. . . . *Of course, the admitted attorney cannot share his or her fee with the suspended attorney, any more than he or she could share the fee with a layman*.

*Id.* at 1185-86 (emphasis added) (footnote omitted).

Applying *Mitchell* to the circumstances in this case, we conclude that the panel did not abuse its discretion when it found that Mr. Martin had continued to practice law in the Northern District of Oklahoma despite his suspension, and we reach this conclusion for two reasons. First, Mr. Martin testified at the hearing before the panel that, while he referred all Northern District of Oklahoma cases to supervising attorneys who were admitted to practice in that court, he nonetheless shared or split the attorney's fees that were paid to those attorneys. *See* Supplemental R., Vol. II at 4-5. In fact, in some of the cases he may have received one half of the total fee. *Id.* at 15-16. Second, Mr. Martin testified that he participated in client interviews. *Id.* at 3-4. As noted by the panel, "[c]lient contact was specifically prohibited by the *Mitchell* court," Aplt. App., Tab 14 at 7 n.5, and we agree with the Third Circuit that a suspended attorney should not be permitted to have contact with clients. Moreover, even if we were to conclude that there may be special circumstances when a suspended attorney

-14-

should be permitted to have limited contact with clients, Mr. Martin has failed to advance any convincing reasons for allowing client contact with regard to his suspension.

Finally, we reject Mr. Martin's argument that the panel erred by failing to consider his good faith efforts to reconfigure his practice to comply with the "parameters" set forth by the Oklahoma Supreme Court in *Taylor v. Chubb Group of Ins. Cos.*, 874 P.2d 806 (Okla. 1994). *See* Aplt. Br. at 24. *Taylor* addressed the issue of whether a reference in an Oklahoma statute to "attorneys fees" included fees for services performed by legal assistants. *Id.* at 807. Although tangentially relevant, *Taylor* provides no meaningful guidance with regard to the suspension issues in this case. As a result, to the extent Mr. Martin was relying on *Taylor*, his reliance was misplaced.

We AFFIRM the district court's November 25, 2003 order. We also GRANT the "Application for Leave to Supplement Briefing" that Mr. Martin filed on February 14, 2005.